764 October 3, 2024 No. 34

# IN THE SUPREME COURT OF THE STATE OF OREGON

ANTHONY LEE BENJAMIN IV,
*Plaintiff,*

*v.*

Nicole Morrisey O'DONNELL,
Sheriff, Multnomah County,
*Defendant,*

*and*

STATE OF OREGON,
*Interested Party.*
(CC 110230554) (SC S070313)

Original proceeding in habeas corpus.*

Argued and submitted September 14, 2023.

Megan E. McVicar, Hoevet Olson, PC, Portland, argued the cause and filed the brief for plaintiff.

Benjamin Gutman, Solicitor General, Salem, argued the cause and filed the briefs for interested party. Also on the brief was Ellen F. Rosenblum, Attorney General.

Before Flynn, Chief Justice, and Duncan, Garrett, DeHoog, James, Masih, Justices, and Nakamoto, Senior Judge, Justice pro tempore.**

DUNCAN, J.

The petition for a writ of habeas corpus is denied.

_____

\* Multnomah County Circuit Court (110230554), Andrew M. Lavin, and Jenna Plank, Judges.

\*\* Bushong, J., did not participate in the consideration or decision of this case. Nakamoto, Senior Judge, Justice pro tempore participated in the consideration and decision of this case.

**DUNCAN, J.**

ORS 136.290 establishes a 60-day limit on how long a defendant "may remain in custody pending commencement of the trial of the defendant."[1] The limit is subject to exceptions and extensions, but if it is reached, the defendant must be released. The question presented in this case is whether ORS 136.290 applies when the pending trial is a retrial. For the reasons explained below, we conclude that it does.

## I.   PROCEDURAL FACTS

In Multnomah County Circuit Court, defendant was charged by indictment with second-degree murder, and he was held in jail pending trial.[2] His case was tried to a jury, which acquitted him of second-degree murder but convicted him of the lesser-included offense of first-degree manslaughter. The trial court sentenced defendant to 200 months in prison in the custody of the Oregon Department of Corrections.[3]

Defendant brought a habeas corpus action in federal court, arguing, among other things, that his trial counsel had provided constitutionally ineffective assistance relating to his conviction for manslaughter. The federal court agreed with that argument and issued an order granting defendant relief. The federal court's order terminated the state's authority to continue to hold defendant in custody for the purpose of serving his manslaughter sentence. Therefore, the state could not continue to hold defendant in custody unless it chose to retry him and hold him pending the retrial.

The state chose to retry defendant, and the Department of Corrections released defendant from its custody and into the custody of the Multnomah County Sheriff, which took

---

[1]  ORS 136.290 is set out below. 372 Or at 770.

[2]  This case is before this court on a petition for a writ of habeas corpus arising out of a retrial in a criminal case. Plaintiff in this habeas case is the defendant in the criminal case and, throughout this opinion, we refer to him as defendant.

[3]  In addition to the second-degree murder charge, defendant was charged with other crimes in the underlying criminal case and two related cases. Only the murder charge, which resulted in the manslaughter conviction, is at issue before this court.

defendant from prison to jail to be held pending the retrial. At his initial appearance for that trial, the trial court determined that defendant was indigent and appointed counsel to represent him. The court set defendant's bail at $500,000.

After defendant had been returned to jail and held for more than 60 days, he filed two motions in the trial court for release pursuant to the 60-day limit on pretrial custody under ORS 136.290. The motions were heard by different judges. The judges denied the motions, ruling that the 60-day limit does not apply to retrials. The judge that heard defendant's second motion reduced defendant's bail to $300,000.

Defendant then filed a petition for a writ of habeas corpus in this court seeking his release from custody based on the 60-day limit. In response, we ordered the sheriff to show cause why defendant should not be released. In addition, because defendant's trial date was approaching, we asked the sheriff to address whether, if defendant's pretrial custody were to end because his trial were to commence, we should nevertheless exercise our discretionary authority under ORS 14.175 to address whether the 60-day limit applies to defendants who are being held pending retrials. *See* ORS 14.175 (providing that courts may adjudicate certain moot cases if, among other things, they present questions that are "capable of repetition," yet "likely to evade judicial review").[4] Following that order, the state gave notice of its intent to participate as an interested party and filed a memorandum in opposition to defendant's petition, to which the sheriff deferred.[5]

---

[4] ORS 14.175 provides that, even if a judgment in a case "no longer has a practical effect on the party" who initiated it, a court may nonetheless "issue a judgment" on the validity of an "act, policy or practice of a public body" if the following three requirements are satisfied:

"(1) The party had standing to commence the action;

"(2) The act challenged by the party is capable of repetition, or the policy or practice challenged by the party continues in effect; and

"(3) The challenged policy or practice, or similar acts, are likely to evade judicial review in the future."

When a case satisfies those requirements, a court may adjudicate it, but it is not required to do so. *Id.* ORS 14.175 "leaves it to the court to determine whether it is appropriate to adjudicate an otherwise moot case under the circumstances of each case." *Couey v. Atkins*, 357 Or 460, 522, 355 P3d 866 (2015).

[5] Since the state gave notice of its intent to participate, it has been the only party to respond substantively to defendant's petition and briefing. The sheriff has deferred to the state's position in those responses.

We allowed defendant's petition but did not order his release. Instead, we directed the parties to submit additional briefing and appear for oral argument. Meanwhile, defendant pleaded no-contest to the manslaughter charge and the trial court sentenced him to 120 months in prison, which was less time than defendant had already served for that offense. As a result, no trial was held and defendant was released from custody.

## II.   JUSTICIABILITY

Because this case comes to us on defendant's petition for habeas corpus and defendant has been released from custody, we first must determine whether to dismiss the case as moot. The parties agree that, although the case is moot, it meets the requirements of ORS 14.175. We agree, and we opt to exercise our discretion to address the statutory construction question that this case presents because it is one that arises frequently and concerns a matter important to the courts, the state, defendants, and others involved in criminal cases: whether a defendant can be held in custody for more than 60 days while awaiting a retrial.[6]

---

[6] The state argues that we should not exercise discretion because, in its view, this case presents "unusual facts" that are not likely to exist in future cases presenting this issue, making it a "[non]optimal vehicle for addressing how ORS 136.290 applies to retrials generally." In particular, the state points to the fact that the state charged defendant with murder before his original trial and that ORS 136.290 does not apply to murder charges when "the proof is evident or the presumption strong that the person is guilty." *See* ORS 136.295(1) (ORS 136.290 does not apply to persons charged with crimes that are not releasable offenses under ORS 135.240); ORS 135.240(2)(a) (murder is not a releasable offense "when the proof is evident or the presumption strong that the person is guilty").

Even putting aside that the trial court did not make the requisite findings to exempt defendant's original murder charge from ORS 136.290, we disagree with the state's position and think the facts in this case are sufficient to reach the desired issue. When defendant petitioned this court for relief, defendant (1) was facing retrial on the charge of first-degree manslaughter, which is not exempt from ORS 136.290; (2) had not waived his rights under ORS 136.290 as to that retrial; and (3) had been held in custody pending retrial for more than 60 days. Those facts allow us to address whether ORS 136.290 applies to other defendants who (1) are facing retrial on charges that are not exempt from ORS 136.290; (2) have not waived their rights under ORS 136.290 as to that retrial; and (3) have been held in custody pending retrial for more than 60 days. To the extent that the facts that the state identifies could have made a difference in our application of any decision we reach on that issue in defendant's particular case, we need not address it because defendant has been released from custody and, therefore, our decision will no longer affect him.

### III.   INTERPRETATION OF ORS 136.290

When interpreting a statute, our task is to determine the legislature's intent. *SAIF v. Ward*, 369 Or 384, 394, 506 P3d 386 (2002). To do so, we apply the methodology set forth in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). We consider the text of the statute; its context, including related statutes; and any useful legislative history. *Id*.

### A.   *Overview of Pretrial Release Statutes*

Before examining the text of ORS 136.290 in detail, we begin with an overview of the pretrial release statutes. Those statutes include ORS 135.230 to 135.295, which establish criteria for determining whether a defendant is eligible for pretrial release and, if so, what type of release is appropriate. They also include ORS 136.290 and ORS 136.295, which limit the amount of time a defendant may be held in custody pending trial.

We turn first to the statutes that govern pretrial release in general: ORS 135.230 to 135.295. A defendant is eligible for pretrial release unless (1) the defendant is charged with murder, treason, or a violent felony; and (2) a court makes certain findings. ORS 135.240(2), (4).

If a defendant is eligible for pretrial release, a court must determine the terms of the release, including whether the defendant should be released on a "security release," "conditional release," or on the defendant's own recognizance. ORS 135.245. The court must impose the "least onerous condition reasonably likely to ensure the safety of the public and the victim and the person's later appearance." ORS 135.245(3). Here, as mentioned, the trial court imposed security release and identified conditions defendant would be subject to if he were able to post the required security. It initially set defendant's bail at $500,000 and later reduced it to $300,000.

In addition to the general pretrial release statutes, the legislature has enacted the statute at issue in this case, ORS 136.290, which establishes a 60-day limit on pretrial custody, and a related statute, ORS 136.295, which sets out exceptions to the 60-day limit, identifies periods that do not count toward the limit, and provides for extensions of the limit. ORS 136.290 provides:

> "(1) Except as provided in ORS 136.295, a defendant shall not remain in custody pending commencement of the trial of the defendant more than 60 days after the time of arrest unless the trial is continued with the express consent of the defendant. Absent the consent of the defendant or an extension under ORS 136.295, the court shall order that the trial of the defendant commence within 60 days after arrest if the state is prepared to proceed to trial.
>
> "(2) If a trial is not commenced within the period required by subsection (1) of this section, the court shall release the defendant on the own recognizance of the defendant, or in the custody of a third party, or upon whatever additional reasonable terms and conditions the court deems just as provided in ORS 135.230 to 135.290."

As shown, ORS 136.290 contains two related subsections. Subsection (1) establishes a limit on pretrial custody. It provides that a defendant shall not remain in custody pending trial more than 60 days after arrest unless an exception set out in ORS 136.295 applies or the defendant expressly consents to a continuance. Subsection (1) also requires a court to order the commencement of the defendant's trial within 60 days after the defendant's arrest if the state is prepared to proceed to trial, unless an extension under ORS 136.295 applies or the defendant consents to a later trial. Subsection (2) requires a court to release a defendant, subject to reasonable terms and conditions, if a trial is not commenced within the period required by subsection (1).

As this court has observed, "[t]he obvious purpose" of ORS 136.290 "is to limit the amount of time that a defendant may be held in custody pending trial." *State v. McDowell*, 352 Or 27, 31, 279 P3d 198 (2012). If the 60-day limit, or an extension of it, applies and has been exceeded, "the court shall release the defendant." ORS 136.290(2). The release requirement is "clear and unambiguous." *Price v. Zarbano*, 265 Or 126, 129, 508 P2d 182 (1973). If the conditions for release have been met, release "is mandatory." *Collins v. Foster*, 299 Or 90, 94, 698 P2d 953 (1985).

When a court releases a defendant pursuant to ORS 136.290, the court may set reasonable release terms and conditions. But it may not set "a security amount which

the person in custody cannot meet," because doing so would result in the continued custody of a person who is entitled to release under ORS 136.290. *Collins*, 299 Or at 95 (so holding and observing that, "[t]o hold otherwise would allow the court to do indirectly that which it cannot do directly").

The 60-day limit on pretrial custody is subject to several exceptions, exclusions, and extensions, all set out in ORS 136.295. One subsection of ORS 136.295 establishes exclusions; it provides, in part, that "ORS 136.290 does not apply to persons charged with crimes that are not releasable offenses under ORS 135.240" or to "prisoners serving sentences resulting from prior convictions." ORS 136.295(1). Other subsections exclude certain periods of time from the calculation of the 60-day limit, including "[a]ny period following defendant's arrest in which the defendant is not actually in custody," ORS 136.295(5), and "[a]ny reasonable delay" resulting from a defendant's motion or appeal, ORS 136.295(3). Still other subsections provide for extensions of the 60-day limit in certain circumstances, including when a defendant must be extradited from another jurisdiction, ORS 136.295(2), and when "good cause" exists, ORS 136.295(4).[7] In this case, the state's position in the trial court was that ORS 136.290 does not apply to retrials at all; the state did not argue, in the alternative, that any of the exceptions or extensions under ORS 136.295 applied.[8]

---

[7] "Good cause" is defined to include a number of circumstances. ORS 136.295 (4)(b). Upon a showing of good cause, a court "may order an extension of custody and postponement of the date of the trial of not more than 60 additional days." ORS 136.295(4)(a). "The court, for the same reason, may order a second extension of custody and postponement *** of not more than 60 days, but in no event shall the defendant be held in custody before trial for more than a total of 180 days." *Id*.

[8] ORS 136.295 provides, in full:

"(1)   ORS 136.290 does not apply to persons charged with crimes that are not releasable offenses under ORS 135.240 or to persons charged with conspiracy to commit murder, or charged with attempted murder, or to prisoners serving sentences resulting from prior convictions.

"(2)(a)   If the defendant is extradited from another jurisdiction, the 60-day period shall not commence until the defendant enters the State of Oregon, provided that law enforcement authorities from the other jurisdiction and this state have conducted the extradition with all practicable speed. The original 60-day period shall not be extended more than an additional 60 days, except where delay has been caused by the defendant in opposing the extradition.

"(b)   For purposes of this subsection, an extradition is presumed to have been conducted with all practicable speed if it has been conducted within 90 days after the date the defendant has been delivered to an agent of this state.

B.   *Text*

    With that overview of the pretrial release statutes as background, we turn to the text of ORS 136.290. Again, ORS 136.290 provides:

---

    "(3)  Any reasonable delay resulting from examination or hearing regarding the defendant's mental condition or competency to stand trial, or resulting from other motion or appeal by the defendant, shall not be included in the 60-day period.

    "(4)(a)   If a victim or witness to the crime in question is unable to testify within the original 60-day period because of injuries received at the time the alleged crime was committed or upon a showing of good cause, the court may order an extension of custody and postponement of the date of the trial of not more than 60 additional days. The court, for the same reason, may order a second extension of custody and postponement of the date of the trial of not more than 60 days, but in no event shall the defendant be held in custody before trial for more than a total of 180 days. A court may grant an extension based upon good cause as described in paragraph (b)(C), (D) or (E) of this subsection only if requested by the defendant or defense counsel or by the court on its own motion.

    "(b)   As used in this subsection, 'good cause' means situations in which:

    "(A)   The court failed to comply with ORS 136.145 and the victim is unable to attend the trial;

    "(B)   The victim or an essential witness for either the state or the defense is unable to testify at the trial because of circumstances beyond the control of the victim or witness;

    "(C)   The attorney for the defendant cannot reasonably be expected to try the case within the 60-day period;

    "(D)   The attorney for the defendant has recently been appointed and cannot be ready to try the case within the 60-day period;

    "(E)   The attorney for the defendant is unable to try the case within the 60-day period because of conflicting schedules;

    "(F)   Scientific evidence is necessary and because of the complexity of the procedures it would be unreasonable to have the procedures completed within the 60-day period;

    "(G)   The defendant has filed notice under ORS 161.309 of the defendant's intention to rely upon a defense of insanity, partial responsibility or diminished capacity;

    "(H)    The defendant has filed any notice of an affirmative defense within the last 20 days of the 60-day period;

    "(I)   A claim under ORS 147.515, or a motion under ORS 147.522, relating to victims' rights is pending, the court has considered the factors described in ORS 147.525 and the court has determined that the trial date should be rescheduled subject to the time limit provided in ORS 147.525; or

    "(J)   The defendant has received discovery of digital video evidence from a video camera worn upon a law enforcement officer's person and, though discovery has occurred in a reasonably timely manner, editing of the digital video evidence is necessary.

    "(5)   Any period following defendant's arrest in which the defendant is not actually in custody shall not be included in the 60-day computation."

"(1) Except as provided in ORS 136.295, a defendant shall not remain in custody pending commencement of the trial of the defendant more than 60 days after the time of arrest unless the trial is continued with the express consent of the defendant. Absent the consent of the defendant or an extension under ORS 136.295, the court shall order that the trial of the defendant commence within 60 days after arrest if the state is prepared to proceed to trial.

"(2) If a trial is not commenced within the period required by subsection (1) of this section, the court shall release the defendant on the own recognizance of the defendant, or in the custody of a third party, or upon whatever additional reasonable terms and conditions the court deems just as provided in ORS 135.230 to 135.290."

The text of ORS 136.290 indicates that the statute imposes a limit on pretrial custody. It is concerned with defendants who are in custody "pending" their trials. It sets a 60-day limit on the time between a defendant's arrest and the "commencement" of the defendant's trial. It also requires a court order that the trial commence within that 60-day limit "if the state is prepared to proceed to trial." And it provides that, if a trial is not commenced within that limit, the court shall release the defendant subject to "reasonable terms and conditions the court deems just as provided in ORS 135.230 to 135.290," statutes that govern pretrial release. Thus, the text of ORS 136.290 shows that the legislature was concerned about defendants who were being held in custody for upcoming trials.

As this case illustrates, a single case may involve more than one trial. Consequently, a defendant may be "in custody pending commencement of the trial of the defendant" more than once in a case. Notably, nothing in the text of ORS 136.290 limits the statute's protections to when a defendant is being held pending the defendant's *first* trial.

If, as the text of ORS 136.290 provides, the 60-day limit applies to a defendant who is being held "in custody pending commencement of the trial of the defendant," it can apply multiple times in a case. When a defendant successfully challenges a conviction for which he is serving a sentence, the state loses the authority to hold the defendant in

custody to serve his sentence. If the state wants to continue to hold the defendant in custody, it must have another reason. If that reason is to hold the defendant pending a retrial, then the defendant would again be "in custody pending commencement of the trial of the defendant." In other words, the defendant would be in the type of custody that ORS 136.290 describes and limits.

For example, in this case, defendant was held in custody pending his first trial and the 60-day limit ran from his arrest for that trial until the commencement of that trial. At that trial, defendant was convicted of manslaughter and sentenced to prison. He was then taken into the custody of the Department of Corrections to serve his sentence. Later, defendant sought and obtained habeas corpus relief in federal court. The federal court's order terminated the department's authority to continue to hold defendant for the purpose of serving his manslaughter sentence. If the state wanted to continue to hold defendant, it had to do so for a different reason. It did so; it held him pending his second trial. Thus, based on the text of ORS 136.290 alone, it would appear that defendant was in the type of custody that ORS 136.290 limits.

The state would have us read ORS 136.290 differently. In the state's view, the text of ORS 136.290 supports the conclusion that the statute applies only when defendants are in custody pending commencement of their first trials. According to the state, there is no statutory limit on the amount of time that a defendant may be held in custody pending a second or subsequent trial. The state bases its view, in part, on two aspects of the text of ORS 136.290: (1) that the statute's time limit runs from the time of a defendant's "arrest" and (2) that the statute requires release only if "a trial" is not commenced within the time limit.

First, the state argues that, because the time limit set out in ORS 136.290(1) runs from a defendant's "arrest," applying the limit to second or subsequent trials is unworkable. The state argues that (1) "arrest" means "initial arrest," a premise that the state draws from *McDowell*; (2) "initial arrest" means the first time that a defendant is arrested in connection with *a case* (as opposed to the first time that a

defendant is arrested in connection with *a particular trial* in a case); and (3) if the 60-day limit runs from the first time that a defendant is arrested in connection with a case, applying the limit to retrials is unworkable. According to the state,

> "if 'arrest' means 'initial arrest,' then for almost any retrial the trial court would not be able to comply with ORS 136.290(1)'s mandate to schedule the trial to commence within 60 days. In most cases, nearly all of the 60-day period allowed by ORS 136.290—or the extensions of up to 180 days allowed by ORS 136.295(4)—will have elapsed between the initial arrest and commencement of the first trial. *** When a conviction is reversed on appeal or through collateral proceedings, years may have passed since the initial arrest, and no new trial could be commenced in the required period."

We disagree with the state's assertion that applying ORS 136.290 to retrials is unworkable. As explained above, a defendant may have multiple trials, each with its own, separate period of pretrial custody. And, as we explain next, *McDowell* shows that the 60-day limit on pretrial custody starts when a defendant is arrested for an *upcoming* trial and continues until *that* trial commences.

In *McDowell*, the state arrested the defendant on July 24, 2011, for first-degree assault and unlawful use of a weapon and held him in custody pending trial on those charges. 352 Or at 29. A grand jury indicted the defendant, and the case was eventually scheduled to be tried several months later, on March 16, 2012. *Id.* But the state was not ready to proceed on that date, and the court dismissed the indictment pursuant to ORS 136.120, which provides that, if the state "is not ready and does not show sufficient cause for postponing the trial, the court shall dismiss the accusatory instrument unless the court determines that dismissal is not in the public interest." *Id.* On March 20, 2012, a grand jury indicted the defendant on the same charges, and, on March 24, 2012, the state arrested the defendant on the new indictment. *Id.* at 29-30. The new indictment charged the defendant with "precisely the same offenses as did the original, based on the same incidents and the same victim." *Id.* at 30. On April 9, 2012, the defendant moved for release

pursuant to ORS 136.290 on the ground that he had been in custody pending trial "more than 230 days following his initial arrest, plus an additional 16 days following the second arrest on the same charges." *Id.* The trial court denied the motion, ruling that the defendant's second arrest started a second 60-day limit. *Id.* The defendant petitioned this court for a writ of mandamus, which we allowed, ultimately holding that all of the time that the defendant had been held pending the trial that had not yet occurred counted toward the 60-day limit. *Id.* at 30-32. We based our holding on the "obvious purpose" of ORS 136.290, which is "to limit the amount of time that a defendant may be held in custody pending trial." *Id.* at 31. That purpose would be frustrated, we explained, if the state could avoid the limit by "repeatedly dismissing charges, refiling them, and rearresting a defendant." *Id.* Then, based on the specific facts of the case, we held:

> "Certainly in a case in which the prosecution releases a defendant and then promptly rearrests him on precisely the same charges on which he already has been held well past the 60-day period, we see no reason to read 'the time of arrest' as anything other than the time of the initial arrest."

*Id.* Thus, in *McDowell*, this court reasoned that the relevant arrest was the initial arrest for the *upcoming* trial. We held that the 60-day limit started to run on the defendant's July 24, 2011, arrest because that was when he was first held *pending the trial that had still not occurred* when he filed his motion for release. We rejected the state's argument that the relevant arrest was the arrest on the second indictment, explaining that accepting that argument would have deprived the defendant of the protection that the legislature intended ORS 136.290 to provide.

Although *McDowell* did not involve a second or subsequent trial, two of its points are relevant here. The first is that ORS 136.290 must be construed in keeping with its "obvious purpose," which is "to limit the amount of time that a defendant may be held in custody pending trial." *McDowell*, 352 Or at 31. The second and related point is that, because the purpose of ORS 136.290 is to limit the

amount of time that a defendant is in custody pending trial, the relevant time is the time that the defendant is in custody for the *pending* trial. Thus, *McDowell*'s construction of ORS 136.290 indicates that, when a defendant is being held pending his second trial, the relevant time is the time that the defendant has been in custody pending that trial. Thus, contrary to the state's assertion, applying ORS 136.290 to retrials is not unworkable. The statute's 60-day limit would run from the time of the defendant's arrest for the retrial.

The state makes a second argument based on the fact that the 60-day limit begins to run at the time of a defendant's "arrest." It contends that the limit should not be read to apply to pretrial custody before second and subsequent trials because some defendants are already in custody before those trials and, therefore, they cannot be "arrested" for those trials. According to the state, "there is not necessarily a new 'arrest' of an in-custody defendant every time a trial ends in a mistrial or a case is remanded for retrial," because the defendant may already be in custody and transferring a defendant "from one facility to another does not take them *into* custody; it continues the custodial status that exists." (Emphasis in original.)

As we understand it, the state's argument is that a defendant cannot be "arrested" for the purposes of ORS 136.290 if the person is already in custody. That is incorrect. Contrary to the state's argument, a person who is already in custody for one reason can be "arrested" for the purposes of ORS 136.290. That is shown by the fact that ORS 136.295 includes an exception to the 60-day limit for "prisoners serving sentences resulting from prior convictions." ORS 136.295(1). If a prisoner—that is, a person who is already in custody—could not be "arrested" for the purposes of ORS 136.290, the legislature would not have needed to provide an exception to ORS 136.290 and its 60-day limit for prisoners serving sentences resulting from prior convictions.

The term "arrest" is not defined for the purposes of ORS 136.290 but its meaning can be determined from the way it is used in that statute. As discussed, ORS 136.290 establishes a 60-day limit on the amount of time a defendant can be held pending trial. The fact that the defendant's

"arrest" is the starting point of the 60-day period indicates that an "arrest" occurs when the state takes custody of a defendant in order to hold the defendant pending trial. In other words, it indicates that an "arrest" is a state action that puts the defendant in the type of custody that the legislature wanted to limit: custody pending trial.[9]

In addition to its arguments based on the term "arrest" in ORS 136.290(1), the state also makes an argument based on the words "a trial" in ORS 136.290(2). Again, ORS 136.290(2) provides, "If *a trial* is not commenced within the period required by subsection (1) of this section, the court shall release the defendant," subject to reasonable terms and conditions. (Emphasis added.) The state asserts that "[t]he legislature's use of the singular, indefinite 'a' is notable." According to the state,

> "ORS 136.290(2) directs the court to release a defendant only if '*a* trial' is not commenced within the period required by subsection (1), typically 60 days from arrest. The use of the singular, indefinite 'a' signals that commencing *one* trial within that period satisfies the statute, even if a second trial is eventually needed. The statute's text thus suggests that it does not apply to retrials."

(Emphases in original.)

As we understand it, the state's argument is based on its view that "the period required by subsection (1)" always runs from a defendant's first arrest in a case. But, for the reasons just discussed, "the period required by subsection (1)" is the period within which a defendant's pending trial must be held. Therefore, the reference in subsection (2) to "a trial" is a reference to a trial to resolve the case on which the defendant is being held in custody.

---

[9] As mentioned, "arrest" is not defined for the purposes of ORS 136.290. But when the legislature enacted ORS 136.290, "arrest" was defined by *former* ORS 133.210. *Former* ORS 133.210 (1969), *repealed by* Or Laws 1973, ch 836, § 358. *Former* ORS 133.210 defined "arrest" as "the taking of a person into custody so that he may be held to answer for a crime." The state relies on that definition to argue that a person who is already in custody cannot be "arrested" for the purposes of ORS 136.290. But, as discussed above, the exception in ORS 136.295 for "prisoners serving sentences resulting from prior convictions" counters that argument. That exception indicates that the legislature understood that a person could be "arrested" for the purposes of ORS 136.290 even if the person was already in custody, and that in turn indicates that an "arrest" occurs for the purposes of ORS 136.290 when the state holds a defendant for an upcoming trial.

In sum, the text of ORS 136.290 demonstrates the statute's purpose, which is to limit the amount of time a defendant may be held in custody pending trial. The terms of the statute show that it concerns custody for upcoming trials. ORS 136.290 (referring to custody "pending" trial, the "commencement" of trial, the state's readiness to "proceed to trial"). The statute does not expressly limit its application to a defendant's first trial. And, contrary to the state's assertion, applying the statute to second or subsequent trials would not be unworkable. The statute's 60-day limit would apply to each period of pretrial custody; that is, for each trial, it would apply to the period that the defendant was in custody pending that trial. Thus, the text of ORS 136.290 suggests that the statute applies to retrials.

C.  *Context*

Having considered the text of ORS 136.290, we turn to its context. Context includes related statutes. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). As discussed, ORS 136.290, which establishes the 60-day limit, is related to ORS 136.295, which contains exclusions to the limit and authorizes extensions of the 60-day period. Absent an exception or extension, the 60-day limit applies and entitles a defendant to release.

As explained next, in *Collins*, and thereafter in *Brophy v. Burks*, 307 Or 62, 762 P2d 1017 (1988), this court established that, when an exception under ORS 136.295 does not expressly apply to a defendant who is otherwise eligible for release, that defendant must receive the protections provided by ORS 136.290.

In *Collins*, the defendant was indicted and arrested for murder, and held in custody pending trial on that charge for more than 60 days. 299 Or at 93. The defendant thereafter moved for release under ORS 136.290, which the trial court denied on the ground that, under ORS 136.295(1), persons charged with offenses that are not "releasable" under ORS 135.240—murder and treason—are not eligible for release. *Id.* at 93-94. On review, this court reversed because murder is not a "releasable" offense under ORS 135.240 only if the trial court finds that "'the proof is evident or the

presumption strong that the person is guilty,'" which the trial court had not done in that case. *Id*. at 94 (quoting ORS 135.240(2)); *id*. ("If the legislature had intended to exclude murder and treason without qualification from the 60 day rule it could have said so instead of incorporating by the reference the exact language of ORS 135.240."). Given the absence of that finding, this court reversed, observing that, "[i]f a defendant is eligible for release under the statutory scheme, then the provision of ORS 136.290 requiring that the court 'shall release' the defendant is mandatory and the court has no discretion." *Id*.

In *Brophy*, the defendant was indicted and arrested for unlawful possession and manufacture of a controlled substance, and thereafter held in custody pending trial. 307 Or at 64. After the defendant's first two court-appointed attorneys withdrew for reasons outside of his control, which both caused the date of the defendant's trial to be delayed, the defendant moved for release under ORS 136.290. *Id*. at 64-65. The trial court denied the motion, ruling that the 60-day limit did not apply because the delays in trial, while attributable to the defendant's counsel, amounted to a "motion *** by the defendant" under ORS 136.295(3). *Id*. at 65; *see* ORS 136.295(3) ("Any reasonable delay resulting from *** other motion or appeal by the defendant[] shall not be included in the 60-day period."). On review, this court reversed, concluding that "the obligation to step aside was that of the lawyer, whatever his client's wishes" and, therefore, "[t]o attribute the resulting delay to [the defendant], when he had no power to influence the event, would be contrary to the idea implicit in the language of ORS 136.295(3)." *Brophy*, 307 Or at 66. Accordingly, because the exception that the trial court had relied on, ORS 136.295(3), did not apply, and "[n]o other legal excuse was applicable," the court held that the defendant was entitled to release under ORS 136.290. *Id*. at 66-67.

*Collins* and *Brophy* establish that, absent an express exception under ORS 136.295, the 60-day limit applies. Notably, ORS 136.295 does not include an exception for defendants who are being held for second or subsequent trials. If the legislature did not want the 60-day limit to

apply to such defendants, "it could have said so." *Collins*, 299 Or at 94. Thus, the legislature was mindful of situations where it did not want the 60-day limit to apply, and those apparently did not include situations where a defendant was in custody pending a second or subsequent trial.

Moreover, as we will explain, the legislative history of ORS 136.290 shows that the legislature enacted ORS 136.290 because it was concerned about the harms that can result from pretrial detention, which are disproportionally borne by defendants who cannot afford bail. It recognized that defendants without financial resources can be subjected to detentions that defendants with financial resources can avoid. It thus enacted ORS 136.290 so that defendants without financial resources cannot be held in custody pending trial for more than 60 days in circumstances where defendants with financial resources can avoid that custody by posting bail. That objective sheds light on the exceptions in ORS 136.295: they are for situations where defendants cannot secure their release, regardless of their financial resources, specifically, situations where defendants are "charged with crimes that are not releasable offenses under ORS 135.240" and where they are "serving sentences resulting from prior convictions." ORS 136.295(1). Therefore, reading ORS 136.290 and ORS 136.295 together in light of their legislative history indicates that ORS 136.290 applies to retrials.

Before turning to the legislative history of ORS 136.290, we address two arguments that the state makes regarding the context of ORS 136.290. The first argument is based on ORS 136.300, which was enacted in 1971 as part of the same bill as ORS 136.290 and concerns appeals by in-custody defendants from municipal and justice courts to circuit courts. ORS 136.300 provides:

> "A defendant who is in custody pending an appeal to circuit court from a judgment of a municipal court or justice court shall have the appeal of the defendant heard not more than 60 days after the defendant gives notice of appeal."

The state argues that appeals from municipal and justice courts to circuit courts are "*de novo* retrials" and that, "[i]f the legislature had intended ORS 136.290 to apply

every time there was another trial in a case, it is difficult to see why the legislature would have seen the need to add a separate provision governing *de novo* retrials in circuit court." Therefore, according to the state, the legislature's enactment of ORS 136.300 is evidence that "the legislature did not understand ORS 136.290 generally to cover retrials."

The state's argument—that, if ORS 136.290 covers retrials, then the legislature would not have needed to enact ORS 136.300—fails to appreciate that the two statutes apply in different situations and do different things. Unlike ORS 136.290, which sets a limit on how long a defendant may be held in custody pending trial, ORS 136.300 sets a limit on when an appeal must be heard. And, because ORS 136.290 concerns trials and ORS 136.300 concerns appeals, the statutes' 60-day limits are keyed to different events. The 60-day limit in ORS 136.290 on pretrial custody runs from the state's arrest of the defendant, whereas the 60-day limit in ORS 136.300 on when an appeal must be heard runs from the defendant's filing of the notice of appeal. In addition, unlike ORS 136.290, ORS 136.300 does not provide for any exception to, or extension of, its 60-day limit. It simply requires that the defendant's appeal be heard within that limit. Thus, the state's argument that, if ORS 136.290 covers retrials, then ORS 136.300 would be unnecessary, is incorrect. The two statutes apply in different contexts and impose different requirements.[10]

The state's second argument regarding the context of ORS 136.290 relies on the "speedy-trial statutes" enacted in 2014: ORS 135.746 to 135.752. But ORS 136.290 and the speedy-trial statutes differ in significant ways. ORS 136.290 establishes a 60-day limit on pretrial custody that

---

[10] Because ORS 136.300 does not provide for any exception to, or extension of, its 60-day limit, it is stricter than ORS 136.290. There are reasons why the legislature would have made it so. An appeal from a justice or municipal court is brought in a circuit court only when the justice or municipal court is not a court of record. ORS 221.359; ORS 157.005. The legislature reasonably could have chosen to impose a strict time limit for an in-custody defendant's appeal from such a court in order to expedite the defendant's opportunity to be heard in a court of record. (Appeals from municipal and justice courts that are courts of record are brought in the Court of Appeals. ORS 221.359; ORS 157.005; ORS 138.035(1)). In addition, the legislature may have reasonably thought that, given the limited jurisdiction of municipal and justice courts, appeals from those courts could be heard within 60 days without the need for extensions.

runs from a defendant's arrest, and, if a trial is not commenced within that limit, the defendant must be released, but the case is not dismissed. In contrast, the speedy-trial statutes set multi-year limits on how much time can pass between a defendant's indictment and trial (two years for misdemeanors and three years for felonies, with certain exceptions), regardless of whether the defendant is in custody, and provides that, if a trial is not commenced within those limits, the case is dismissed. ORS 135.746(1)(a), (b); ORS 135.752. Those differences reflect the different purposes of ORS 136.290 and the speedy-trial statutes. ORS 136.290 protects in-custody defendants. The speedy-trial statutes apply regardless of a defendant's custody status.[11]

Moreover, ORS 136.290 was enacted in 1971, and the speedy-trial statutes on which the state relies were enacted more than four decades later, in 2014. "Ordinarily, only statutes enacted simultaneously with or before a statute at issue are pertinent context for interpreting that statute." *Gaines*, 346 Or at 177 n 16.

Despite the differences between the statutes and the fact that ORS 136.290 predates the speedy-trial statutes, the state argues that the speedy-trial statutes shed light on whether ORS 136.290 applies to retrials. The state relies on a footnote in *Gaines* in which we observed that "it may be that later enacted statutes can be of some aid in interpreting an earlier one *for the limited purpose of demonstrating the legislature's adherence to certain conventions* in legislative drafting or word usage." 346 Or at 177 n 16 (emphasis added). The state points out that, like ORS 136.290, the speedy-trial statutes include a requirement that a trial be commenced within a certain time period and provide a consequence "[i]f a trial is not commenced" within that period. The state argues that the legislature would have understood "the requirement to commence '*a* trial' within the statutory period" to apply only to a defendant's first trial. (Emphasis

---

[11] This court has not had occasion to address the purposes of the 2014 speedy-trial statutes. But we have held that an earlier version of the speedy-trial statutes served as a "'housecleaning' mechanism triggered by the length of time that a particular case has been in the system, rather than by the effect of the delay on a particular defendant." *State v. Emery*, 318 Or 460, 467, 869 P2d 859 (1994) (so stating regarding *former* ORS 135.747 (1973), *repealed by* Or Laws 2013, ch 431, § 1).

in original.) But that argument is at odds with the fact that, at least as the state itself understands them, the speedy-trial statutes apply to some retrials, specifically, those following a mistrial.[12] Therefore, even assuming that we could draw anything from the speedy-trial statutes to inform our understanding of ORS 136.290, it would be that the requirement to commence "a trial" within a certain time period can apply to retrials.

To summarize, the context of ORS 136.290 suggests that the statute applies to retrials. ORS 136.295 sets out exceptions to ORS 136.290 and it does not include an exception for custody pending retrials, nor is there any apparent reason why the legislature would have intended to leave such custody without a limit. The state's contextual arguments, based on ORS 136.300 and the speedy-trial statutes, do not provide a basis for concluding otherwise.

D.  *Legislative History*

Having considered the text and context of ORS 136.290, we turn to its legislative history, which, as we will explain, resolves the question of whether ORS 136.290 applies to retrials. The legislature enacted ORS 136.290 in 1971. Or Laws 1971, ch 323, §§ 3-4.[13] ORS 136.290 began as HB 1533. Representative Harl Haas explained that the purpose behind HB 1533 was to protect defendants who could not afford to post bail and reduce the disparity in the amount of time that those defendants and defendants who

---

[12] As the state understands them, the speedy-trial statutes enacted in 2014 changed the rule announced by the Court of Appeals in *State v. Garner*, 253 Or App 64, 72, 289 P3d 351 (2012), *rev den*, 353 Or 280 (2013), which involved an earlier version of the speedy-trial statutes that required a defendant to be "brought to trial within a reasonable time." In *Garner*, the court held that "a defendant is brought to trial when the trial commences even if it ultimately results in a mistrial." *Id.* at 72.

[13] As originally enacted, ORS 136.290 provided:

"Except as provided in [ORS 136.295], a defendant shall not remain in custody pending commencement of his trial more than 60 days after the time of his arrest unless the trial is continued with his express consent.

"If a trial is not commenced within the period required by section 3 of this 1971 Act, the court shall release the defendant on his own recognizance, or in the custody of a third party, or upon such bail as the defendant can afford, or upon whatever additional reasonable terms and conditions the court deems just."

Or Laws 1971, ch 323, §§ 3-4.

could afford bail were held in pretrial detention. He stated, "The concept behind the bill is that incarceration, prior to conviction, just should not depend upon one's ability to post bail." Tape Recording, Senate Committee on Criminal Law and Procedure, HB 1533, Apr 21, 1971, Tape 18, Side 2 (statement of Rep Harl Haas). Similarly, Representative Howard Willits stated, "We often worry about the forgotten man. Well, the truly forgotten man is the one who has been arrested and while awaiting trial has been put in jail because he doesn't have enough money to get out." *Id*. A representative of the Ad Hoc Police Community Relations Committee, Reverend Austin Harper Richardson, also testified in support of the bill, noting, "When we confine persons awaiting trial for unreasonable amounts of time simply because they do not have the funds, we make a clear distinction between an entire class of people, namely the poor." *Id*.

The legislature had two evident concerns about the disparities in the length of pretrial detention served by defendants without financial resources. First, it viewed the fact that some defendants "are confined simply because they are poor when the rich man gets to go free when charged with the same crime," as an "undeniable injustice," when all defendants, regardless of economic status, were entitled to the presumption of innocence. *Id*. (statement of Rev Austin Harper Richardson); *see also id*. (expressing concern for a person "rotting" in pretrial detention because of his inability to afford bail, "even though legally he is presumed innocent" (statement of Rep Howard Willits)). Second, it recognized the harmful effects of extended pretrial detention on defendants, including both that it can interfere with their ability to meet with counsel and prepare a defense, and that it can have adverse consequences on their employment, family and community relationships, and mental and physical health. *Id*. (recognizing the "real psychological impact" on a person who is arrested and charged with a crime who discovers that others, arrested and charged with the same crime, are allowed to remain at home, associate with family, retain employment, consult with an attorney and prepare a defense, while he cannot "merely because he did not have the funds to post bail" (statement of Rep Harl Haas)); *id*. (recognizing that the "quality of justice is remarkably different for

those who are able to post bail and those who are confined before trial" and that extended pretrial incarceration can harm a person's family life and employment (statement of Rev Austin Harper Richardson)).

Overall, the legislative history of ORS 136.290 shows that the legislature enacted ORS 136.290 because it was concerned that defendants without financial resources could be held in extended pretrial detention while those with financial resources could avoid it. The legislature recognized the harmful effects of that disparity—including that extended pretrial detention can distort a defendant's presumption of innocence, impair a defendant's ability to prepare for trial, and negatively impact a defendant's employment, social relationships, and health—and wanted to protect against them.

Importantly, pretrial detention gives rise to the concerns that the legislature identified regardless of whether that custody is pending the first, second, or subsequent trial. That is, a defendant without financial resources can be subject to custody pending retrial that a defendant with financial resources could avoid. And, that disparity, in the context of retrial, can produce each of the harms that the legislature recognized and wanted to protect against. Therefore, construing ORS 136.290 in keeping with its purpose leads to the conclusion that it applies to retrials.

## IV.   CONCLUSION

Based on the text, context, and legislative history of ORS 136.290, we conclude that the 60-day limit on pretrial custody set out in ORS 136.290 applies to retrials. Therefore, the trial court erred in ruling that ORS 136.290 does not apply to retrials and in denying defendant's motions for release. But, because defendant is no longer in custody, having entered a no-contest plea and been sentenced to time that he had already served, we deny his petition for habeas corpus.

The petition for a writ of habeas corpus is denied.